UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| DONALD ANTONIO ALVAREZ RIVERA, <br><br> Petitioner, <br><br> v. <br><br> WARDEN, DESERT VIEW FACILITY *et al.*, <br><br> Respondents. | Case No. 5:26-cv-01792-ACCV <br><br> **AMENDED[1] ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** <br><br> **[FEDERAL CUSTODY]** |

## I.      RULING

On April 10, 2026, Petitioner Donald Antonio Alvarez Rivera ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2241 ("§ 2241"), challenging his detention as a violation of the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act ("APA"), and applicable regulations.  (Docket Number ("Dkt. No.") 1, Pet.)  Consistent with recent decisions by this district and others, the Court finds that Petitioner's re-detention, without notice or a

---

[1] The Court is amending the May 11, 2026 Order Granting Petition for Writ of Habeas Corpus (Dkt. No. 15) to correct typographical errors.

meaningful opportunity to be heard, violates due process.  For the reasons stated herein, the Court GRANTS the Petition and ORDERS Respondents to release Petitioner from custody within three calendar days.

## II.    FACTS AND PROCEDURAL HISTORY

Petitioner is a 29-year-old native and citizen of Nicaragua who is currently detained at the Desert View Facility in Adelanto, California.  (Dkt. No. 1, Pet. at 3, 10.) Petitioner was detained after entering the United States without inspection on October 14, 2022.  (*Id* at 10.)  Following a determination that Petitioner was not a flight risk or a danger to the community, Petitioner was paroled into the United States pursuant to 8 C.F.R. § 212.5.  (*Id.*)  Pursuant to the conditions of his release, Petitioner was required to attend Immigration and Customs Enforcement ("ICE") check-ins.  (*Id.*)  Petitioner has complied with that requirement.  (*Id.*)  During his release, Petitioner filed a Form I-589 Application for Asylum, Withholding of Removal, and Protection under the Convention Against Torture with the United States Citizenship and Immigration Services.  (*Id.*)  Petitioner received work authorization, was employed, lived in Los Angeles with his family, and developed strong community ties.  (*Id.* at 10-11.)

After living and working in the community for more than three years, on March 31, 2026, Petitioner was rearrested and re-detained while appearing at a scheduled ICE check-in, and was issued a Notice to Appear.  (*Id* at 10.)  Petitioner did not violate any of the conditions of his release, was lawfully and gainfully employed, and did not have any criminal arrests or convictions of which he is aware.  (*Id.*)  The Notice to Appear placed Petitioner in proceedings before the Adelanto Immigration Court pursuant to 8 U.S.C. § 1229a.  (*Id.* at 10-11.)

Three days after filing his Petition, Petitioner filed an Ex Parte Application for a Temporary Restraining Order as to Preliminary Injunction ("TRO Application").  (Dkt. No. 6, TRO Application.)  Petitioner sought immediate release from immigration detention or a bond hearing.  (*Id.*)  The Court ordered a bond hearing, under which the

government bore the burden of proving by clear and convincing evidence that Petitioner was a flight risk or a danger to the community. (Dkt. No. 12, Ord. Re Bond Hearing at 1.) Respondents and Petitioner filed status reports noting the immigration judge denied bond on the basis that Petitioner was a flight risk. (Dkt. Nos. 13, Respondents' Status Rep. at 2; 14, Petitioner's Status Rep. at 1.)

The Petition advances three claims. (Dkt. No. 1, Pet. at 11-16.) First, Petitioner argues his substantive due process rights were violated. (*Id.* at 11-12 (citing *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001)).) Second, Petitioner argues that his procedural due process rights were violated when he was re-detained without notice or a pre-deprivation hearing. (*Id.* at 12-14.) Third, Petitioner argues his re-detention after being deemed neither a flight risk nor a danger to the community and with no change in circumstances violates the APA as arbitrary and capricious agency action. (*Id.* at 15-16.)

Among the relief requested, Petitioner asks this Court to issue an order requiring his immediate release, and prevent his re-detention, unless his detention is ordered following a hearing where the government bears the burden of proving, by clear and convincing evidence that Petitioner is a flight risk or danger to the community. (*Id.* at 16.) Petitioner voluntarily consented to the assigned magistrate judge's jurisdiction under 28 U.S.C. § 636(c). (Dkt. No. 3.)

On April 20, 2026, Respondents filed a response stating that "Respondents are not presenting an opposition argument at this time." (Dkt. No. 10.) Petitioner's reply filed on April 21, 2026, requests immediate release, which Petitioner reiterated in his status report filed on May 8, 2026. (Dkt. Nos. 11, 14.)

### III.    LEGAL STANDARDS

Federal district courts possess the authority to grant petitions for writ of habeas corpus by a person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c)(3). "The petitioner

3

carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); *see also Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 911 (W.D. Wash. 2025) (noting that immigration detainee bears burden of proving by a preponderance of the evidence that he is entitled to habeas relief).

## IV.   DISCUSSION

Petitioner argues that his ongoing confinement violates substantive due process, procedural due process, and the APA.  The Court begins with Petitioner's procedural due process claim, as success on that claim would offer him the most significant relief, which is an order for release from custody.  For the below reasons, the Court concludes that Petitioner's detention violates due process.

### A.   Habeas Jurisdiction

As an initial matter, this Court has habeas jurisdiction over this case.  8 U.S.C. § 1226(e) provides: "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."  "That provision does not, however, preclude habeas jurisdiction over constitutional claims or questions of law."  *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quotation marks and citations omitted).

Petitioner challenges the constitutionality and sufficiency of the process by which he was arrested, had his parole revoked, and was re-detained.  (Dkt. No. 1, Pet. at 11-15.)  As such, this Court has habeas jurisdiction under 28 U.S.C. § 2241 to consider these claims.  *See Hernandez*, 872 F.3d at 987.

### B.   Respondents' Non-Opposition

A statement of non-opposition may be deemed consent to the granting of a motion.  *See* L.R. 7-12 ("The failure to file any required document, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion . . . ."); *see, e.g.*, *Rivali v. Shutterfly, LLC*, 2022 WL 3127866, at *1 (C.D. Cal.

4

June 28, 2022) (construing a statement of nonopposition as consent to the granting of a motion to compel arbitration and granting the motion); *Club One Casino, Inc. v. Sarantos*, 2017 WL 4123935, at *1-*2 (E.D. Cal. Sept. 15, 2017) (granting a motion to dismiss based upon the plaintiff's statement of non-opposition); *Burks v. Salazar*, 2012 WL 6020120, at *1-*2 (recommending that a motion to dismiss be granted based upon the plaintiff's statement of non-opposition), *adopted*, 2013 WL 978684 (E.D. Cal. Mar. 12, 2013).

Here, the Court construes Respondents' Answer—in which they are "not presenting an opposition argument"—as Respondents' consent to the granting of the Petition. *See id.* Based upon Respondents' consent to the granting of the Petition, the Court may grant the Petition without "engag[ing] in a detailed analysis[.]" *See Sullivan v. Luna*, 2023 WL 9119245, at *2 (C.D. Cal. Nov. 13, 2023), *adopted*, 2024 WL 83246 (C.D. Cal. Jan. 8, 2024); *see also Clemons v. United States*, 2022 WL 4596651, at *4 (C.D. Cal. July 7, 2022) ("[T]he Court may independent[ly] grant Defendant's motion based on Plaintiff's non-opposition.").

The Court nonetheless provides a reasoned decision below regarding Petitioner's due process claim.

## C.    Petitioner's Due Process Claim

A writ of habeas corpus may be granted to any petitioner who demonstrates "[h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973). "[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Rasul v. Bush*, 542 U.S. 466, 474, 124 S. Ct. 2686, 159 L. Ed. 2d 548 (2004). A petitioner bears the burden of proving by the

preponderance of the evidence that he is entitled to habeas relief.  *Davis*, 384 F.3d at 638.

Petitioner argues Respondents violated his procedural due process rights under the Fifth Amendment because he was re-detained without prior notice or an opportunity to be heard.  (Dkt. No. 1, Pet. at 12-14.)  Respondents make no argument in opposition.  (Dkt. No. 10, Answer at 1-2.)

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law[.]"  U.S. CONST. amend. V.  Although "[the] Fifth Amendment's protections do not extend to aliens outside the territorial boundaries [of the United States,] . . . once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas*, 533 U.S. at 693.  "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  *Reno v. Flores*, 507 U.S. 292, 306, 113 S. Ct. 1439, 123 L. Ed. 2d. 1 (1993).

"Due process is flexible and calls for such procedural protections as the particular situation demands."  *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (cleaned up).  The *Mathews* test balances three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. at 335; *see also Zinermon v. Burch*, 494 U.S. 113, 127, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990).  "Applying this test, the [Supreme Court] usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."  *Zinermon*, 494 U.S. at 127 (emphasis in original) (collecting cases).

The first *Mathews* factor is Petitioner's private interest.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.[2]  "The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."  *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (citing, *e.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972) (finding prison parolees have a due process liberty interest)).

Because Petitioner was initially paroled into this country, he was present in the country lawfully and has a significant liberty interest in remaining free from detention that must be protected by adequate procedural safeguards.  *See Morrissey*, 408 U.S. at 481-82 ("The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions . . . .  [T]he liberty [of a parolee] is valuable and must be seen as within the protection of the Fourteenth Amendment."); *Doe*, 787 F. Supp. 3d at 1093.  Even if Respondents had argued that the Department of Homeland Security ("DHS") has extensive discretion in deciding whether an individual should be detained or re-detained, "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez*, 872 F.3d at 981.  Here, Petitioner was paroled from DHS custody after his initial apprehension and has been free for more than three years, living with his family

---

[2] The Supreme Court "has said that government detention violates [the Due Process] Clause unless the detention is ordered in a criminal proceeding with adequate procedural protections, or, in certain special and narrow nonpunitive circumstances, where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (cleaned up).  Immigration removal proceedings are civil, not criminal, and courts assume they are nonpunitive in purpose and effect. *Id.*

and working in the community. His release constituted an "implied promise" that his liberty would not be revoked unless he failed to live up to the conditions of his release. *See Morrissey*, 408 U.S. at 482. Here, Petitioner has lived up to the conditions of his release for over three years. Accordingly, Petitioner's private interest in retaining his liberty is significant.

The second *Mathews* factor is the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards. While "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," the Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003). The Immigration and Nationality Act grants the Secretary of Homeland Security and other authorized officials broad discretion to grant or deny parole. 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(a). That discretion, however, is not unbounded and requires compliance with due process rights.

Based on the undisputed facts in the record, the Court finds the risk of erroneous deprivation is considerable here. Petitioner was not provided notice of the termination of his parole or an opportunity to be heard before he was re-detained, as required by 8 C.F.R. § 212.5(e)(2). Respondents do not contest that Petitioner has abided by the conditions of his initial release from DHS custody over three years ago. As noted before, Respondents make no opposition argument to the Petition. Additionally, Respondents held Petitioner before he received a bond hearing and only provided a bond hearing after this Court's order to do so. Petitioner, thus, appears to have been deprived of his liberty interest erroneously.

The final *Mathews* factor is the government's interest. Through their lack of opposition argument, Respondents fail to establish that the government has any interest in allowing Respondents to re-detain Petitioner without notice and a hearing.

8

Respondents, similarly, do not offer any argument or explanation for why Petitioner could not have been provided with notice and an opportunity to be heard *before* his parole was revoked and he was re-detained, as is generally required under *Zinermon*, 494 U.S. at 127. Respondents, thus, fail to establish that the government has any interest in Petitioner's continued detention.

After considering all three *Mathews* factors, the Court concludes that Petitioner is entitled to release on procedural due process grounds. Having found Respondents violated Petitioner's procedural due process rights, the Court need not address Petitioner's remaining claims. Nothing prevents Petitioner from raising these claims again in the future should the government re-detain Petitioner following the procedures set forth here.

## V.    CONCLUSION

For the reasons stated, the Court GRANTS the Petition and ORDERS that Respondents:

(1)    release Petitioner within three calendar days under the same conditions as he was released prior to his re-detention;

(2)    return all property to Petitioner that was confiscated from him when he was arrested and processed into detention;

(3)    file a statement with the Court within one business day of Petitioner's release, attesting to Respondents' compliance with this Order; and

(4)    are prohibited from re-detaining Petitioner absent notice and a hearing before an immigration judge at which the government must justify his detention by clear and convincing evidence.

DATED: May 26, 2026

_____
HON. ANGELA C. C. VIRAMONTES
United States Magistrate Judge

9